UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10CV297-3-MU

MICHAEL RANKINS,            )
                            )
        Petitioner,          )
                            )
            v.              )           **O R D E R**
                            )
ALVIN W. KELLER,            )
                            )
        Respondent.          )
_____)

**THIS MATTER** is before the Court on initial review of Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1). For the reasons stated herein, Petitioner's Petition for Writ of Habeas Corpus is denied and dismissed.

**I. Procedural History**

A review of the record reveals that on December 12, 2009, Petitioner came to the intake window at the prison dining hall during regular diet hours. Petitioner showed Officer Thompson his special diet dining card. (See Respondent's Mot. For Summ. Judgment, Ex. 1 at 11.) Because the special diet inmates had already been fed, Officer Thompson told Petitioner it was too late for him to eat. (Id.) Officer Thompson requested the assistance of Officer D. Aaron in dealing with the Petitioner. (Id.) Officer Aaron told Petitioner that special diet inmates had already finished eating and ordered Petitioner back to his unit. (Id. at 10.) When Petitioner refused to leave the dining hall, Officer Aaron again directed that he leave the dining hall and Petitioner did so. (Id.) Approximately two minutes later, Officer Aaron and Officer Thompson saw Petitioner in the dining hall eating a regular diet meal. (Id. at 10, 11.) As Petitioner was exiting the dining hall, Officer Aaron requested

1

to see his identification card, but Petitioner refused. (Id. at 10.)

Petitioner, as well as Officers Thompson and Aaron submitted statements to the investigating officer, Sergeant Rufus C. Carter. (Id. at 10, 11, 12.) In his statement, Petitioner alleged that his cell door was not opened at the time the special diet food trays were being served in the dining hall. Petitioner claim that the incident was the result of Officers Thompson and Aaron retaliating against him for joining in a lawsuit concerning the denial of Muslim services to North Carolina prisoners. Petitioner stated that he had spoken about retaliatory acts with Mr. Neely, facility administrator, and Mr. Dalrymple, assistant superintendent of programs. Petitioner claims that he never took a regular diet tray from the dining hall food line; rather, another inmate gave Petitioner the tray. (Id. at 12.)

Petitioner requested that Sergeant Carter obtain a statement from inmate Edward McLaurin. (Id. at 7.) Inmate McLaurin stated that he offered Petitioner his food tray, but that another individual gave Petitioner a tray. (Id. at 13.) Petitioner also requested that he be allowed to call Administrator Neely and Assistant Superintendent Dalrymple as witnesses, but Sergeant Carter determined that any information that had to give was irrelevant. (Id. at 7.)

On December 13, 2009, Petitioner received notification that he had been accused of violating inmate conduct rules and that an investigation had begun. (Id. at 9.) On December 13, 2009, following the investigation, Sergeant Carter filed a report recommending that Petitioner be charged for disobeying a direct lawful order, labeled a "C3" offense in accordance with DOC disciplinary offense rules. (Id. at 8.)

Sergeant Carter submitted his report to Captain Donald Evans, Jr. In addition to reviewing the report and the supporting evidence, Captain Edwards addressed a request by Petitioner to obtain a video of the dining hall. (Id. at 5.) Captain Edwards found that such evidence was not necessary because it would have only supported what Petitioner admitted through his statement, that he ate a

regular diet food tray. Captain Edwards determined that Petitioner's statement "clearly support[ed]" a finding that Petitioner obtained a regular diet food tray. Captain Edwards recommended finding that Petitioner disobeyed a direct order and, because Petitioner pled not guilty, Captain Edwards referred the case to the prison's disciplinary hearing officer (DHO). (Id.)

At his disciplinary hearing on December 21, 2009, DHO Billie J. Weaver reviewed all the information, evidence and statements and concluded that Petitioner was guilty of disobeying a direct order. (Id. at 2.) Specifically, DHO Weaver found and concluded the following:

> As reported by Officer Aaron[,] on 12/12/09 Inmate Rankins was given two orders to leave the dining hall with inmate complying after the second order but found back in the dining hall approx. 2 minutes later eating another inmate's tray of food. Inmate Rankins acknowledged his rights. Inmate Rankins stated that the officer did not open his cell door for him to go to his special diet so he had a right to eat. Inmate McLaurin stated that Inmate Rankins got a tray of food from another inmate but was going to give his tray to him. The live witnesses requested by Inmate Rankins of Admin. Neely and Asst. Supt. Dalrymple were denied as they were not present during this incident and their statements would not be relevant to this case. In review of all information this DHO is finding Inmate Rankins guilty of the CO3 charge as he did get a tray of food from another inmate which is against policy and does support the CO3 charge. This was observed by Officer Aaron and Officer Thompson as Inmate Rankins is on special diets and was in the dining hall during regular diets.

(Id.) Petitioner received thirty days of segregation time, which was suspended for three months; a twenty-day loss of good time credits; thirty hours of "extra duty"; and a suspension of telephone and canteen privileges. (Id. at 4.) Petitioner appealed and on January 11, 2010, Chief DHO Hattie Pimpong reviewed and denied Petitioner's appeal. (Id. at 1.) Chief DHO Pimpong determined "that the proper procedures were followed, that sufficient evidence was present to reach a finding of guilty, and that punishments were in accord with divisional policy and procedure."

On May 12, 2010, Petitioner filed the instant Petitioner in the United States District Court for the Eastern District of North Carolina. The Eastern District transferred the petition to this Court

3

on July 2, 2010.  Specifically, Petitioner alleges that his due process rights were violated because (1) he was not given the opportunity to present evidence; (2) in retaliation for him filing a civil lawsuit, Captain Edwards would not allow Petitioner to present evidence; (3) there was insufficient evidence of a C3 violation, and the C3 disciplinary infraction is unconstitutionally vague; and (4) Chief DHO did not review the tape of the disciplinary hearing prior to rending her decision.

Petitioner challenges the loss of his good time credits, therefore, because his action at its core, seeks to shorten the length of his confinement, it sounds in habeas and his sole federal remedy is a writ of habeas corpus, to which the exhaustion requirement is applicable.[1]  Preiser v. Rodrigues, 411 U.S. 475, 489 (1973).

In the instant case, Petitioner's substantive claim is that he was denied due process at his disciplinary hearing.  This Court's review of the Petition reveals no constitutional violations.  The Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974) held that when a liberty interest is at issue, certain procedural safeguards must be followed.  The Court has also stated that a decision by a disciplinary board to revoke good-time credits passes scrutiny under the Due Process Claus if there is some evidence in the record to support the conclusions.  Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985).  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.  Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence to support such a conviction, nor any other standard greater than some evidence applies in this context."  Id. at 456 (internal citations omitted).  Therefore, federal courts will not review the

---

[1] The Court notes that it appears that Petitioner may not have exhausted his state remedies as is required for a suit under 28 U.S.C. § 2254.  However, a district court retains discretion to deny a petition on its merits notwithstanding a petitioner's failure to satisfy the exhaustion requirement.  28 U.S.C. § 2254(b)(2).

entire record, weigh evidence or assess witness credibility. Id. at 455-56. A disciplinary board's findings will be disturbed only when unsupported by any evidence or wholly arbitrary and capricious. Id. at 457.

Petitioner first argues that he as denied due process because he was not given the opportunity to present evidence. According to Wolff, when a liberty interest is at stake in a prison disciplinary proceeding, the inmate is entitled to, among other things, the right to call witnesses and present evidence. Wolff, 418 U.S. at 564-66. However, the right to call witnesses and present evidence was not unqualified. Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566. It follows from Wolff that it is within the discretion of prison officials to deny requests to gather evidence or call witnesses, and "their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration." Brown, 373 F.3d at 505.

Petitioner argues that he was denied the opportunity to call witnesses to corroborate his defense. It seems Petitioner is referring to his request that Administrator Neely and Assistant Superintendent Dalrymple be called as witnesses at his disciplinary hearing. Petitioner also argues that he should have been allowed to present a video of the dining hall food line to support his defense.

The DHO denied Petitioner's request to call Administrator Neely and Superintendent Dalrymple concluding that their testimony was not relevant because they were not present during the incident for which Petitioner was being disciplined. (See Respondent's Motion for Summ. Judgment, Ex. 1 at 2). Such a conclusion was within the DHO's discretion and Petitioner has not

5

established a due process violation. Further, any video of the dining hall is similarly irrelevant in that Petitioner admitted to disobeying an order by eating another inmate's food tray.[2] (Id. at 12.) Petitioner's statement was also corroborated by inmate McLaurin's statement that he offered his tray to Petitioner, but another inmate had already given a tray of food to Petitioner. (Id. at 13.)

The DHO gave solid, well-reasoned, and reasonable explanations supporting her denials. The DHO did not abuse her discretion, and there was no deprivation of Petitioner's right to due process as defined by Wolff. Accordingly, Petitioner's claim that he was denied due process because he was not given the opportunity to present evidence is denied.

Next, Petitioner argues that he was denied due process because, Captain Edwards, in retaliation for Petitioner filing a civil suit, denied him an opportunity to present evidence. In his conclusory allegation, Petitioner presents no evidence suggesting that Captain Edwards' recommendation and action concerning Petitioner's disciplinary proceedings were taken in retaliation. Moreover, as noted above, Captain Edwards' conclusion that Petitioner disobeyed a direct order was supported by the evidence which included Petitioner's own statement. As explained above, the evidence Petitioner was not permitted to present, which included a video of the dining hall food line and witness testimony, was not relevant. Accordingly, Petitioner's claim that Captain Edwards' denied him an opportunity to present evidence in retaliation for filing a civil suit is conclusory and without merit.[3]

---

[2] While DHO Weaver did not directly address the request for video evidence, she impliedly adopt Captain Edwards' report in which he asserted that the video was irrelevant. (See Respondent's Mot. For Summ. Judgment, Ex. 1 at 3, 5.) Captain Edwards' assessment of he relevance of the video was supported by the evidence, including the statements of Petitioner, Officers Aaron and Thompson and Inmate McLaurin.

[3] The Court notes that retaliation claims by prisoners are to be viewed with "skepticism" as [e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it

Petitioner next argues that there was insufficient evidence of a C3 violation and the C3 disciplinary infraction is unconstitutionally vague. First, there is sufficient evidence to support a finding of guilt in a prison disciplinary proceeding where there is "some evidence" supporting the DHO's decision. Superintendent v. Hill, 472 U.S. 445, 454 (1985). North Carolina inmates commit C3 violations when they "[w]illfully disobey or fail to obey or cause another inmate to disobey or fail to obey any lawful order of a prison official or employee, or any other lawful order to which subject[.]" N.C. Dep't of Correction Policy and Pro., Inmate Disciplinary Pro. Ch. B, § .0202(c)(C3); Ex. 2 to Respondent's Motion for Summ. Judgment.) Petitioner was a special diet inmate and attempted to enter the dining hall to eat at a time when only regular diet inmates were eating. Officer Aaron ordered Petitioner repeatedly to leave the dining hall. Petitioner did leave, but returned a few moments later and ate a regular diet food tray. There was more than "some evidence" to support Petitioner's disciplinary infraction, including Petitioner's own statement that he got a regular diet tray from another inmate. Petitioner's claim that there was insufficient evidence to support his C3 violation is without merit.

Petitioner's claim that C3 is an unconstitutionally vague disciplinary rule is likewise without merit. A statute or regulation is unconstitutionally vague where it does not afford proper notice of the prohibited conduct. United States v. National Dairy Products Corp., 372 U.S. 29, 32 (1963). "In determining the sufficiency of the notice," a regulation "must of necessity be examined in the light of the conduct with which a defendant is charged." Id. at 33. The application of this principle is slightly different when dealing with a challenge to a prison disciplinary rule.

> Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such

---

responds to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. As such, it is nearly impossible for prison authorities to anticipate, through a narrowly drawn regulation, every conceivable form of misconduct which threatens prison security.

Meyers v. Alldredge, 492 F.2d 296, 310 (3d Cir. 1974).

A C3 violation is not vague. It dictates that if a prisoner disobeys an order, he will be punished. This is sufficient to give the prisoners notice of the prohibited conduct. While the disciplinary rule does not specify what the orders may be, such lack of specificity is warranted in the penological setting, where "it is nearly impossible for prison authorities to anticipate, through a narrowly drawn regulation, every conceivable form of misconduct which threatens prison security." Id. Therefore C3 is not vague and Petitioner's claim is denied.

As his final claim for relief, Petitioner contends that his due process rights were violated because the Chief DHO did not review the tape of the disciplinary hearing prior to rendering her decision. Petitioner has no due process right to have the Chief DHO review a tape of a disciplinary hearing prior to rendering a decision. Therefore this claim is denied as it is without merit.

**THEREFORE IT IS HEREBY ORDERED** that Petitioner's § 2254 Petition (Doc. No. 1) is **DENIED** and **DISMISSED**. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller -El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

**SO ORDERED**.

Signed: August 16, 2010

Graham C. Mullen
United States District Judge
